*907 OPINION OF THE COURT
Barbara F. Newman, J.
By decision and order dated August 27, 2008 (hereinafter the 8/27/08 order), this court, inter alia, converted the above-captioned action from a special proceeding under article 70 of the Civil Practice Law and Rules to a special proceeding under CPLR article 78. Upon conversion the court granted the petition to the extent and only to the extent that the period of post-release supervision (hereinafter PRS), which had been unlawfully imposed upon petitioner by respondent New York State Department of Correctional Services (hereinafter DOCS), and parole violation warrant number 577098, which had been issued by respondent New York State Division of Parole (hereinafter DOP) for his alleged violation of said PRS, which warrant was among the reasons, but not the sole cause and pretense, for his detention, were vacated. The petition was otherwise denied. Respondents now move for leave to reargue and ask that upon reargument the court rescind that aspect of its decision and order in which it vacated the warrant. Petitioner opposes.
The court has reviewed the applicable law and the following documents: (1) respondents’ motion to reargue dated September 5, 2008; (2) respondents’ exhibit A; (3) petitioner’s affirmation in opposition to motion to reargue dated February[1] 7, 2008; and (4) respondents’ affirmation in reply to affirmation in opposition to motion to reargue dated September 19, 2008.
Upon consideration of all of the foregoing, and for the reasons that follow, the motion for leave to reargue is granted and upon reargument the court adheres to its determination on petitioner’s original application. (CPLR 2221 [f].)
Factual Background
On December 22, 1998, petitioner was sentenced in Supreme Court, Albany County, to an indeterminate term of imprisonment of 2Vs to 7 years upon his conviction for criminal sale of a controlled substance in the fifth degree (Penal Law § 220.06 [hereinafter the 1998 sentence]). On January 22, 2001, petitioner was sentenced in Supreme Court, Richmond County, to a determinate term of imprisonment of five years upon his conviction by his plea of guilty to one count of criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]), and an in *908 determinate term of imprisonment of SVa to 7 years upon his conviction by plea of guilty to attempted criminal possession of a controlled substance in the third degree (Penal Law §§ 110.00, 220.16 [1]), those sentences to run concurrently with each other (hereinafter the 2001 sentence). Although the imposition of a period of PRS was required by law on petitioner’s conviction for criminal possession of a weapon in the third degree, the 2001 sentence as pronounced by the sentencing court did not include a period of PRS. The commitment order by which custody of, and authority to detain, petitioner was given to DOCS following the 2001 sentence did not include a notation that a period of PRS had been imposed by the sentencing court. On February 2, 2007, DOCS itself imposed a five-year period of PRS and released petitioner to PRS under the supervision of DOE On April 30, 2008, DOP caused parole violation warrant number 577098 (hereinafter the PRS warrant), charging petitioner with violating various conditions of his PRS, to be executed against him. As of August 27, 2008 (the date of the 8/27/08 order), petitioner was also being held on a criminal charge related to his arrest in Kings County for his alleged possession of a loaded, defaced firearm.
Discussion
Respondents’ motion for leave to reargue is granted because it concerns an issue which was arguably raised[2] but not addressed in the consideration and determination of petitioner’s application, and the motion does not include any matter of fact not offered on that application. (See CPLR 2221 [d] [2].) Although petitioner had originally sought relief under CPLR article 70, he was not entitled to habeas corpus release because the PRS warrant was not the sole cause and pretense of his detention; he was also being held on the criminal charge pending in Kings County. (CPLR 7010 [a]; see also People ex rel. Santoro v Hollins, 273 AD2d 829 [4th Dept 2000]; People ex rel. *909 Russell v Artuz, 265 AD2d 512 [2d Dept 1999].) Rather than dismiss the action, the court converted it to a special proceeding under CPLR article 78 (see CPLR 7803 [2]; Matter of Sapp v Payant, 17 Misc 3d 1110[A], 2007 NY Slip Op 51903[U] [Sup Ct, Erie County 2007]; Matter of Pan v New York State Dept. of Correctional Servs., 16 Misc 3d 1101[A], 2007 NY Slip Op 51209[U] [Sup Ct, Kings County 2007]). In its determination on the converted petition the court held that the 2001 sentence did not include a period of PRS (People v Sparber, 10 NY3d 457 [2008]), that the putative PRS which DOCS had purportedly imposed was unlawful and thus a nullity (Matter of Garner v New York State Dept. of Correctional Servs., 10 NY3d 358, 362 [2008]), and that petitioner could not be incarcerated for violating the conditions of a nonexistent period of PRS (People ex rel. Lewis v Warden, Otis Baum Correctional Ctr., 51 AD3d 512 [1st Dept 2008]). Therefore, the court vacated both the putative PRS and the PRS warrant which DOP issued for violations of the putative PRS. On the instant motion respondents “submit that the Court overlooked the import of the fact that Petitioner has time remaining on his underlying sentence” (motion to reargue at 4), and contend that in vacating the PRS warrant, “the Court’s . . . decision has the practical effect of commuting Petitioner’s court-imposed underlying sentence” (id. at 6).
Upon reargument the court finds that it neither overlooked nor misapprehended any matter of fact or law and that the determination of the previously unaddressed “de facto commutation” issue would not have altered its determination on petitioner’s application. By no rational reading of it, does the court’s 8/27/08 order have the practical effect of commuting any aspect of petitioner’s “underlying sentence.”[3] The court’s 8/27/08 order was limited and specific. Only the putative PRS was declared a nullity and the detention of petitioner for violating it was declared improper. Indeed, the legality of the 1998 and 2001 sentences was not even at issue in the determination of petitioner’s application,[4] nor was any motion to commute either of those sentences on any other ground part of the application. Among other things, the intent and effect of the 8/27/08 order was to determine precisely what sentence had been *910 imposed by the sentencing court in 2001, and if PRS was part of it. This court determined that the sentencing court had imposed a determinate term of imprisonment without imposing PRS. The PRS warrant was vacated by this court because its only basis was DOP’s finding that petitioner had violated the conditions of a period of PRS which, in fact, had never existed.
Respondents’ de facto commutation argument is founded upon their speculation as to events which they speculate might have occurred had DOCS not unlawfully imposed and DOP not unlawfully enforced the putative PRS. They contend that since petitioner “still had more than 6 years remaining on his underlying sentence when he was released from DOCS custody on February 2, 2007, he would still be subject to the supervision of [DOP] when he was not in custody” (id. at 5) and, therefore, “[i]f he is no longer a ‘person released to post-release supervision,’ then he is a ‘paroled or conditionally released[5] person’ ” (id. at 6). Accordingly, respondents argue, “his terms of imprisonment would have continued to run upon his release from DOCS custody to parole supervision, but would have been interrupted each time he was declared delinquent by [DOP] . . . , including pursuant to the instant parole warrant.” (Id. at 4-5.) By vacating the PRS warrant, respondents conclude, the court divested DOP of “all jurisdiction” (id. at 6) over petitioner and somehow denigrated the sentence, or sentences, pursuant to which petitioner “would” have been released to parole. In order to erase these perceived consequences, respondents request “that the Court reverse the portion of the decision vacating the parole warrant” (id. at 6), thereby reinstating the warrant as a basis pursuant to which petitioner may be detained. However, the simple unassailable fact is that petitioner was not released to parole supervision on his underlying case so he could not have violated any conditions thereof for which a parole violation warrant could lawfully have been issued.[6] “In effect,” as petitioner’s counsel puts it, respondents are “asking this Court *911 to transfer the post release warrant to some phantom period of parole supervision.” (Affirmation in opposition to motion to reargue at 2.)
Vacatur of the PRS warrant had and will have no effect on the aggregate underlying sentence pursuant to which petitioner might have been released to parole. The fatal flaw in respondents’ argument to the contrary can perhaps be traced to their mistaken contention that release to PRS equals release to parole. Although parole and PRS are administered and enforced pursuant to the same DOP rules and regulations, there are many practical differences between parole and postrelease which stem from the different penological purposes which they serve.[7] One fundamental difference which is determinative here is that release to postrelease supervision upon an inmate’s completion of the incarceration component of a determinate sentence is mandatory (Penal Law § 70.45 [1]; see also People ex rel. O’Connor v Berbary, 195 Misc 2d 36 [2002] [holding that a correctional facility’s continued confinement of an inmate beyond the maximum expiration date of the incarceration component of a determinate sentence based upon DOP’s refusal to release him to PRS was unlawful]), while whether and when an inmate serving an indeterminate sentence is released to parole supervision are within the absolute discretion of the parole board (Penal Law § 70.40 [1] [a]; see also Matter of Hines v State Bd. of Parole, 293 NY 254, 257 [1944] [“so long as the Board violates no positive statutory requirement, its discretion is absolute and beyond review in the courts”]; People ex rel. Stevenson v Warden of Rikers Is., 24 AD3d 122, 123 [1st Dept 2005] [“There is no federal or state constitutional right to be released to parole supervision before serving a full sentence”]).
Therefore, even assuming arguendo that on February 2, 2007, the day he was released by DOCS to the putative PRS, petitioner was eligible to be considered and had applied for release to pa *912 role supervision as part of his aggregate underlying sentence — an assumption for which there is no evidentiary support in the record — there is no basis upon which to presume that absent the putative PRS the parole board in the exercise of its absolute discretion would have granted his application, much less that petitioner would have been released on the same date. Thus, there is no basis upon which to presume, as respondents speculate, that petitioner would have been “on parole,” and not incarcerated, when he allegedly engaged in the conduct for which the PRS warrant was issued. Consequently, the PRS warrant did not interrupt the running of any term of imprisonment to which petitioner was subject as part of his aggregate underlying sentence[8] and since the PRS warrant itself had no effect upon petitioner’s underlying sentence, vacating the warrant has no effect either. The integrity and terms of the 1998 sentence, the indeterminate portion of the 2001 sentence, and the incarceration component of the determinate portion of the 2001 sentence remain as they were on the day each was pronounced and are unaffected by the 8/27/08 order. Clearly, petitioner’s underlying sentence has not been commuted.
Nor has vacatur of the warrant divested DOP of its jurisdiction with respect to petitioner; DOP merely has not yet lawfully[9] exercised its statutory powers and authority to supervise him outside the confines of a correctional facility by releasing him to parole (see Executive Law § 259-a [4]). The 8/27/08 order did not, and the court does not now, determine the time remaining on the underlying indeterminate terms of imprisonment imposed by the 1998 and 2001 sentences as of the date petitioner was released to the putative PRS, nor whether nullification of the putative PRS has had an effect upon the running of those terms of imprisonment,[10] nor whether they have expired in the *913 interim.[11] If those terms of imprisonment have not expired, presumably petitioner will be confined in a correctional facility until the board of parole determines that he should or should not be released to parole supervision. (See Executive Law § 259-c [1], [5].) Nothing the court has done in its August 27, 2008 decision in any way affects DOP’s independently existing jurisdiction or its powers or authority to supervise petitioner should he be granted parole.
Accordingly, for the foregoing reasons, respondents’ motion for leave to reargue is granted and upon reargument the court adheres to its determination on petitioner’s original application, including that parole violation warrant number 577098 is vacated insofar as it related to an alleged violation of the putative PRS and only as to that detainer.

. Obviously, this is a typographical error. The court presumes that this document was signed by petitioner’s counsel on September 7, 2008.

. Respondents contend that the issue which they now seek leave to reargue was raised in their cross motion to transfer, submitted in opposition to the original petition, where they stated: “Petitioner still has 6 years and 3 months left on his underlying sentence. Therefore, Petitioner would not be entitled to immediate release from custody even if his PRS was nullified.” (See motion to reargue at 2, quoting respondents’ cross motion 1Í 6.) In fact, that statement was made in support of respondents’ contention that petitioner was not entitled to a writ of habeas corpus; nowhere in their original submissions did respondents argue, as they do now, that vacating the PRS warrant, as petitioner requested, would have the practical effect of commuting the underlying sentence.

. The court understands that by “underlying sentence” respondents refer to the aggregate term of imprisonment petitioner was required to serve on the 1998 and 2001 sentences, which respondents contend had to run consecutively (see motion to reargue at 3), as calculated by DOCS.

. Rather, the legality of the actions of DOCS and DOI) which were not authorized by those “court-imposed” sentences, was at issue.

. Respondents do not speculate further whether, absent the putative PRS, petitioner would have been “paroled” or “conditionally released.” In fact, the distinction is meaningless because an inmate in petitioner’s situation could not have been “conditionally released prior to the date on which such person [was] first eligible for discretionary parole release.” (Penal Law § 70.40 [1] [b].)

. Petitioner cannot be incarcerated for violating the conditions of a nonexistent period of parole supervision. (Cf. People ex rel. Lewis v Warden, Otis Baum Correctional Ctr., supra [parole warrant which alleged a violation of a nonexistent period of PRS was not a valid basis for detention].)

. “Parolees are, in essence, convicted criminals who Eire released from prison before the expiration of their term, under supervision, and who are allowed to remain outside the penal institution only on stated conditions.” (People v Dyla, 142 AD2d 423, 439 [2d Dept 1988] [emphasis supplied].) In contrast, the purpose of PRS is to facilitate an ex-inmate’s transition to the civilian community following completion of his term of imprisonment. (See People ex rel. O’Connor v Berbary, 195 Misc 2d 36, 37-38 [2002] [discussing statutory purposes of PRS and quoting from legislative memoranda].) Indeed, “[a] determinate sentence of imprisonment does not allow for parole.” (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 70.45, at 396 [2004 ed].)

. Although it is true, as respondents note, that a term of imprisonment continues to run while an inmate is released to parole supervision (Penal Law § 70.40 [1] [a]), and is interrupted during any period in which he is found to have violated parole (Penal Law § 70.40 [3] [a]), petitioner was not on parole.

. DOP’s supervision of petitioner during the putative PRS was not lawful.

. On the one hand, the putative PRS was a nullity ab initio, so the underlying indeterminate terms have not been “held in abeyance until the successful completion of [a] period of post-release supervision” pursuant to Penal Law § 70.45 (5) (a). Yet, on the other hand, for the duration of his release to the putative PRS petitioner was not incarcerated; nor was he on parole, so he did not “continue service” of the underlying indeterminate terms of imprisonment pursuant to Penal Law § 70.40 (1) (a).

. If they have expired, neither DOCS nor DOP has authority to detain petitioner further on the basis of the 1998 or 2001 sentences.